UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JUSTIN HARRIS,                                          :

                               Plaintiff,              :    **REPORT and RECOMMENDATION**

          -against-                                    :         08 Civ. 4837 (CM)(KNF)

CORRECTION OFFICER HOWARD #17721          :
and CITY OF NEW YORK,

                                                       :
                               Defendants.
------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE

# I.  INTRODUCTION

In this action, brought pursuant to 42 U.S.C. § 1983 ("§ 1983"), defendant City of New

York ("City") asserts that any state-law claims made against it must be dismissed because the

plaintiff failed to file a notice of claim timely, as required by New York General Municipal Law

("GML") sections 50-e and 50-i.  The plaintiff maintains he mailed a notice of claim to the City's

comptroller timely.  To resolve the controversy, the Court held a traverse hearing.

# II.  BACKGROUND

Justin Harris ("Harris"), the plaintiff, alleges that, on November 4, 2007, while he was an

inmate at the City's Rikers Island jail complex, defendant Correction Officer Howard

("Howard") assaulted him by spraying mace "[in his] face and left eye for no [] reason."  The

City filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the complaint,

contending the plaintiff failed to state a claim for municipal liability and, further, that any state-

law claims asserted by Harris could not be pursued, because the plaintiff failed to comply with the relevant GML provisions noted above.  In a decision and order, dated October 23, 2009, your Honor granted the City's motion, in part, by dismissing the plaintiff's § 1983 claim.  However, your Honor determined that a traverse hearing was needed, before a final determination could be rendered on the City's motion pertaining to the state-law claims, because record evidence suggested Harris signed a notice of claim timely, on January 22, 2008.

The Court held a traverse hearing on December 15, 2009.  At that hearing, Harris testified that, on January 22, 2008, in the presence of a notary public, he executed a notice of claim germane to the eye injury he alleges he suffered on November 4, 2007.  Harris recalled placing the notice of claim in an envelope bearing a certified mail sticker, and, on the following day, giving the envelope to the facility's mail officer, Correction Officer S. Hart ("Hart").  Harris recalled further that, the next day, Hart returned the envelope to him and advised him it could not be mailed because Harris did not have money in his inmate account to cover the cost of postage. Harris testified that his inmate account contained approximately $10.00 on January 22, 2008.

Harris testified that he spoke to Correction Captain Katherine Cort ("Cort"), who supervised the area in the facility where Harris was housed, about Hart's allegation that Harris had insufficient funds to mail his envelope.  Harris contends he verified for Cort, telephonically, that he had sufficient funds for postage in his inmate account.  Harris testified that Cort took his envelope, bearing the certified mail sticker, but later returned it to him.  According to Harris, Cort advised him that, because of telephone charges Harris had accumulated, no money was available in his inmate account to cover the cost of postage.

Harris testified that he removed the certified mail sticker from his envelope and asked

Correction Officer Anthony Johnson ("Johnson") to mail the envelope.  Johnson agreed to do so.

Harris recalled that he gave the envelope to Johnson approximately one and one-half weeks

before February 2008, because he obtained assistance preparing the notice of claim and knew it

had to be dispatched prior to February 2 or 3.  At the hearing, Johnson testified that he

remembered mailing an envelope for Harris, but could not recall when he did so.  Johnson

remembered the event because: (1) Harris emphasized that the envelope had to be mailed

immediately, as it was important to Harris' case and Harris indicated he had waited until the last

moment to mail the item; and (2) the envelope was larger than a standard envelope, and Johnson

had to manipulate the envelope to deposit it in the mailbox.  Johnson did not recall seeing a

certified mail sticker on the envelope, which he sent via regular mail, and he did not identify,

during his testimony, the addressee on the envelope.

Both Hart and Cort testified at the traverse hearing.  Hart acknowledged that she was the

mail officer in January 2008.  However, she had no recollection of discussing the plaintiff's

inmate account with him or the availability of funds in that account for purchasing certified mail

postage.  Moreover, according to Hart, she did not deny Harris certified mail privileges, because

any inmate lacking sufficient funds in his account, for purchasing postage, would have his mail

sent at the facility's expense.  Hart explained that it is not possible for her to determine whether

Harris sent mail to the City's comptroller, because no log of outgoing inmate mail is maintained

by the jail facility.

For her part, Cort testified that, in January 2008, she never had a conversation with Harris

respecting his inability to send certified mail from the jail facility.  Cort testified further that she

was unaware whether Harris attempted to mail a notice of claim to the City's comptroller in

January 2008.  Cort explained that an inmate's account can have a "hold" placed on it, which

bars the inmate from making commissary purchases.  However, Cort explained further that a

hold on an inmate's account does not prevent the inmate from getting postage or using a

telephone.  Cort was certain of this owing to her familiarity with the City correction department's

inmate-correspondence directives.  In particular, Cort identified Directive No. 4001RR, which,

she testified, was in effect in January 2008.  In its most pertinent part, the Directive advises that:

> The Department shall provide indigent inmates (inmates having no funds in their
> Commissary Account) with free stationery, envelopes and first class postage for
> all letters to attorneys, courts and public officials.  Mail from indigent inmates,
> addressed to the Office of the Comptroller shall be sent by certified mail at
> Departmental expense.  Inmates receiving funds to their Commissary Accounts
> sufficient to cover expenses borne by the Department for certified mail within
> seven (7) calendar days of its posting, may be required to pay for such postage.
> There shall be no postage weight limitations on this type of correspondence.  In
> addition, two (2) postage free personal letters weighing two (2) ounces or less will
> be permitted each week to indigent inmates.
>
> Inmates shall be permitted at their request and their own expense, to send
> correspondence by certified mail.  However, when the inmate is indigent, and as a
> matter of law, rule or regulation and such correspondence is required to be sent by
> certified mail, the expenses shall be borne by the facility concerned.

Directive No. 4001RR, § III, ¶¶L; M

Two other witnesses – Lloyd Perrell ("Perrell") and Michael Aronson ("Aronson") –

testified at the hearing.  Perrell is a consultant to the City's correction department.  In that

capacity, and for the last 17 years, he has supported and maintained the agency's software

systems, including the Inmate Financial Commissary Management System ("IFCOM").  IFCOM

records debits and additions to an inmate's commissary account.  From that account, an inmate

may, among other things, purchase postage and telephone service.

Perrell reviewed Harris' IFCOM account history and determined that, on January 22,

-4-

2008, the account had a balance of $10.36, and, by January 30, 2008, the account's balance was $36.22. During those eight days, the plaintiff's IFCOM account history does not reflect that Harris purchased certified mail postage. Perrell testified that a hold can be placed on an inmate's IFCOM account to satisfy a disciplinary infraction surcharge. According to Perrell, the hold would last for ninety (90) days, the period allotted for an inmate to appeal from a disciplinary determination. A successful appeal results in the release of the hold placed on the account. An unsuccessful appeal allows an agency cashier to deduct the surcharge amount from the inmate's account. Perrell testified that no holds were on Harris' account at or about the time, in January 2008, when Harris contends he sent a notice of claim to the City's comptroller. Perrell stated that the plaintiff's IFCOM account history reflects that the first hold on Harris' account, resulting from a disciplinary surcharge, occurred on March 4, 2008.

Aaronson is the bureau chief of the Bureau of Law and Adjustment, in the City's comptroller's office. He has been employed by the City's comptroller for 30 years and has held his current position for 20 years. Aaronson testified that, through his position, he is familiar with the procedures used to process a notice of claim received by the City's comptroller. Aaronson explained that a notice of claim can be served on the City's comptroller in person or by certified or registered mail. Aaronson stated that a notice of claim received by regular mail is processed as if it had been served in person or by certified or registered mail.

Any notice of claim received by the City's comptroller is scanned, indexed, stored in an image database system called OASIS and assigned a claim number. According to Aaronson, this process is followed regardless of whether a notice of claim is received timely by the City's comptroller. When a notice of claim is received, an acknowledgment letter is sent to the

claimant, or the claimant's attorney, via an automated system.  Thereafter, if it is determined that

the notice of claim is deficient, for example, if the claim is untimely, a disallowance letter is sent

to the claimant or the claimant's counsel.

Aaronson testified that a claimant's last and first name, the date of an incident and the

agency involved in a claim are all searchable fields in OASIS.  Aaronson searched OASIS for all

claims made by the plaintiff.  The notice of claim received by the City's comptroller on April 3,

2009, for the assault Harris maintains occurred on November 4, 2007, is the only notice of claim

for that incident recorded in OASIS.  Aaronson conceded that a notice of claim could be lost by

the City's comptroller.  He explained that "perhaps once or twice in his 20 years'" experience, a

notice of claim received, via first class mail, was misplaced or lost, but it was later found, when

the claimant complained about not receiving an acknowledgment letter from the comptroller.

Harris received an acknowledgment letter from Aaronson dated April 20, 2009, approximately

two weeks after April 3, 2009, the date the City contends its comptroller received the plaintiff's

notice of claim.

### III.  DISCUSSION

"Under New York law, a notice of claim is a condition precedent to bringing personal

injury actions against a municipal corporation. . . . The notice of claim must set forth, inter alia,

the nature of the claim, and must be filed within ninety days of when the claim arises.  See

[GML] § 50-e. [] Notice of claim requirements 'are construed strictly by New York state courts.'

[] Failure to comply with these requirements ordinarily requires a dismissal for failure to state a

cause of action."  Hardy v. New York City Health and Hospitals Corp., 164 F.3d 789, 793-94 (2d

Cir. 1999) (citations omitted).  Where a challenge is made to the timeliness with which a

claimant served a notice of claim and a traverse hearing is held, the burden is upon the plaintiff to establish, by a preponderance of the credible evidence, that service was effected timely.  See Borges v. Entra America, Inc., No. 530 TSN 04, 2005 WL 1355144, at *1 (N.Y. City Civ. Ct. May 9, 2005).

At the traverse hearing held in connection with the instant action, the Court observed the witnesses testify and assessed the credibility of their testimony.  The Court also examined pertinent documents placed in the hearing record.  Based on the record, as a whole, the Court finds that, on January 22, 2008, Harris executed a notice of claim, in the presence of a notary public.  He placed that document in an envelope and affixed a certified mail sticker to it. However, he never purchased certified mail postage in or about the latter portion of January 2008, although his IFCOM account contained $10.36 on January 22, 2008, and, by January 30, 2008, it had a balance of $36.22.  Furthermore, no "hold" on the account prevented Harris from using his IFCOM account funds, in late January 2008, to make purchases, as the documentary evidence placed in the hearing record, through Perrell, shows that Harris used his IFCOM account funds, during this period, to purchase telephone service.

The Court finds incredible Harris' assertion that Hart and Cort prevented him from mailing the envelope containing his notice of claim, via certified mail, by telling him that he either lacked funds to purchase the requisite postage or that accumulated telephone service charges barred Harris from using his IFCOM account funds to acquire certified mail postage. Documentary evidence, referenced above, establishes Harris had funds available to him, in late January 2008, to purchase postage.  Moreover, if, in January 2008, Harris lacked adequate funds to purchase postage, it appears that Correction Department policy, as described in Directive No.

4001RR, may have allowed him to send an envelope addressed to the City's comptroller, via certified mail, at the department's expense.

In any event, Harris abandoned his effort to dispatch the envelope, via certified mail, as he testified he removed the certified mail sticker from the envelope. Thereafter, according to Harris, he solicited Johnson's assistance in mailing the notice of claim, by first-class mail. Although Johnson acknowledged mailing an envelope for Harris, he was ignorant about the contents of the envelope he mailed and could not testify about its intended recipient. Moreover, Johnson could not recall when he mailed the item. While the Court finds that Johnson testified forthrightly and to the best of his recollection, without more, the Court cannot conclude the envelope Johnson deposited in the mail for Harris contained a notice of claim pertinent to the event occurring on November 4, 2007, or that Johnson deposited the envelope in the mail for Harris within 90 days of the event.

Aaronson testified that he searched the comptroller's OASIS system for all claim notices submitted by Harris. The only pertinent notice of claim uncovered, through that search, was received, by the comptroller, in April 2009. Aaronson's demeanor, while testifying, and his concession, that on rare occasions the City's comptroller has lost or misplaced a notice of claim, made him a credible witness. Therefore, the Court gives great weight to his testimony. When that testimony is considered with Johnson's testimony and the documentary evidence presented at the hearing, the Court finds that Harris has not met his burden, see Borges, supra, of establishing, by a preponderance of the credible evidence, that he served the City's comptroller timely with the notice of claim he executed on January 22, 2008. All that Harris has established is that an envelope was mailed for him, via first class mail, by a correction officer, on an

unspecified date, to a recipient the officer is unable to identify.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends your Honor find that Harris did

not serve his notice of claim on the City's comptroller timely.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report to file written objections.

See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with

the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen

McMahon 500 Pearl Street, Room 640, New York, New York, 10007, and to the chambers of the

undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an

extension of time for filing objections must be directed to Judge McMahon. FAILURE TO FILE

OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S.

140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993);

Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-

59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
     April 8, 2010

Respectfully submitted,

_Kevin Nathaniel Fox_

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Justin Harris
Liam Louis Castro, Esq.
Katherine E. Smith, Esq.